203 N.J. Super. 1 (1985)
495 A.2d 878
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JULIO ANDRIAL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 27, 1985.
Decided July 3, 1985.
*3 Before Judges MATTHEWS and HAVEY.
Joseph H. Rodriguez, Public Defender of the State of New Jersey, attorney for appellant (Michele A. Adubato, Designated Counsel, of counsel and on the brief).
Irwin I. Kimmelman, Attorney General of the State of New Jersey, attorney for respondent (Olivia Belfatto, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant was indicted for atrocious assault and battery, N.J.S.A. 2A:90-1 (count one); assault with intent to rape, N.J.S.A. 2A:90-2 (count two); rape, N.J.S.A. 2A:138-1, (count three); unlawful possession of a dangerous weapon, N.J.S.A. 2A:151-41 (count four) and possession of a dangerous weapon with intent to use it unlawfully, N.J.S.A. 2A:151-56 (count five).
At a Wade hearing held regarding an out-of-court photographic identification of defendant by the victim, a detective testified that he had obtained photographs viewed by the victim, which included photographs of defendant, from the police department's "sex crimes file." The trial judge cautioned the detective that no such reference should be made during his testimony before the jury. During trial, after the victim had testified and made an in-court identification of defendant, the same detective testified that during the out-of-court procedure he showed the victim an envelope containing pictures of *4 "known sex offenders." A mistrial was granted and, before a new jury was impanelled, defendant moved for a dismissal of the indictment on double-jeopardy grounds, arguing that he was forced to move for a mistrial due to "prosecutorial overreaching." The trial judge denied the motion, concluding that the detective's remarks were unintentional.
During the fourth day of the second jury trial, after most of the State's case, including the victim's testimony, had been presented, defendant failed to appear. The trial judge determined that defendant's absence was voluntary, proceeded with the trial, see R. 3:16, and issued a bench warrant for his arrest. The jury found defendant guilty on all counts.
After merging counts, one, two, four and five with count three, the trial judge sentenced defendant to a State prison term of not less than 29 years nor more than 30 years.
On appeal, defendant raises the following contentions: (1) the trial judge should not have instructed the jury as to flight; (2) testimony regarding defendant's absence from trial should have been excluded; (3) the out-of-court identification of defendant was unduly suggestive; (4) his motion to dismiss the indictment on double-jeopardy grounds should have been granted; (5) he was denied effective assistance of counsel; (6) his sentence was unduly excessive; and (7) the aggregate errors of the trial judge deprived him of a fair trial. We affirm.
The evidence presented at trial permitted the jury to find that the victim, while returning to her car after shopping at a department store in Union City, was accosted by defendant whom she described at the Wade hearing and at trial as a five foot, ten inch Hispanic male with dark curly hair, a dark complexion and mustache, wearing a tan leather jacket, and a dark shirt with orange circles. Defendant pushed the victim to the ground and while holding a five inch razor against her neck, raped her. While on the ground, the victim was able to observe defendant's face since the area was well lighted and his face was only three inches from hers.
*5 Later that night, after reporting the incident, the victim gave a description of defendant to detectives, which was essentially the same description she gave at the Wade hearing and at trial. Two days later, she was shown an array of 85 photographs depicting caucasion, Hispanic and black males from which, according to her testimony at the Wade hearing, she selected three photographs of defendant. When she picked out the first photograph, she informed the detectives that it looked like her assailant except for the fact that the person in the picture had shorter hair and a lighter skin tone than her attacker. She later testified that the lighter skin tone was attributable to the lighting conditions at the time the photograph was taken. When she selected the second photograph of defendant, she informed the detectives that the person depicted looked exactly like her attacker except for the fact that her assailant's hair was longer and more unkempt. She lastly identified the third photograph which she selected as depicting her attacker without his mustache. Five days after the attack, the victim selected defendant out of a line up of eight males. She was also shown at that time a jacket and shirt which had been seized during a search of defendant's apartment which she identified at trial as the jacket and shirt worn by the perpetrator.
When defendant failed to appear on the fourth day of trial, the mother of defendant's girlfriend, Mrs. Intelli, was called to testify outside the jury's presence. She stated that her daughter and defendant left their home at approximately 4:00 a.m. that morning taking all of defendant's belongings without advising her where they were going. By way of stipulation, the parties agreed to permit the judge to read to the jury the following statement of the mother composed of a series of questions and answers in lieu of live testimony:
... I am certain that you have noted that the defendant has not been in court since the start of yesterday's trial proceedings. By stipulation the parties have agreed that the Court read to you a statement taken under oath yesterday at 12:30 p.m. from the mother of the girl who sat ... behind the defendant throughout the trial up to yesterday.

*6 ....
... Mrs. Intelli says the following: "I know Julio Andrial as my daughter's boyfriend. She is now seven months. He has lived with us for four months....
QUESTION: When did you last see Julio?
ANSWER: Four a.m. this morning.
QUESTION: What did he say?
ANSWER: He didn't say anything. I asked her where she was going and she wouldn't tell me because she said if I knew, I would get nervous.
QUESTION: Did they take anything with them?
ANSWER: Clothes.
QUESTION: Did they take all their clothes?
ANSWER: My daughter didn't take all her clothes but he took everything.
QUESTION: How did he leave?
ANSWER: By car. A Mark IV, I think. Two years old, I think.
....
Also, Ladies and Gentlemen, by stipulation of counsel the Court is also permitted to advise you that efforts of the Hudson County Sheriff's Department to locate the defendant initiated yesterday morning and continuing to this hour have been unsuccessful in locating him.
In a reported opinion, the trial judge concluded that the State had adduced sufficient evidence to support an inference that defendant's flight was motivated by the desire to avoid conviction and was a circumstance tending to prove a consciousness of guilt. State v. Andrial, 150 N.J. Super. 198 (Law Div. 1977). He consequently instructed the jury with respect to defendant's absence at trial by giving a "flight" instruction. Defendant's counsel posed no objection to that instruction.
Defendant contends that the giving of the "flight" instruction constituted plain error since identity of the accused was a central issue. See People v. Anjell, 100 Cal. App.3d 189, 160 Cal. Rptr. 669, 674 (Court of Appeals 1979). His contention is without merit.
We agree with the trial judge's instructions and affirm as to this issue substantially for the reasons stated in his reported opinion, see 150 N.J. Super. at 198. Evidence of a defendant's unexplained flight is generally admissible as tending to prove his consciousness of guilt. State v. Wilson, 57 N.J. 39, 49 (1970); State v. Sullivan, 43 N.J. 209, 238-239 *7 (1964), cert. den. 382 U.S. 990, 86 S.Ct. 564, 15 L.Ed.2d 477 (1966). We find no reported New Jersey case which supports the exclusion of "flight" evidence because identification is in issue. See State v. Cantalupo, 187 N.J. Super. 113 (App.Div. 1982), certif. den. 93 N.J. 274 (1983). The jury had a right to infer from all the circumstances present and unexplained, in conjunction with defendant's leaving on the fourth day of the trial, that it was done with a consciousness of guilt and pursuant to an effort to avoid prosecution based on that guilt. See State v. Sullivan, supra, 43 N.J. at 238-239. Clearly, defendant's hasty departure at 4:00 a.m. with all his belongings after the victim had positively identified him at trial as the individual who raped her, was sufficient to reasonably justify that inference. The instruction was therefore proper.
We also reject defendant's argument, not raised below, that the stipulation regarding Mrs. Intelli's statement should have been excluded by the trial judge sua sponte under Evid. Rule 4. In light of the clearly relevant nature of that evidence, we find no palpable abuse of the trial judge's discretion in permitting the stipulation to be read to the jury. See State v. Carter, 91 N.J. 86, 106 (1982). Moreover, defendant's counsel fully consented to the necessity and manner by which the statement was presented. Defendant should not now be permitted to renege on that agreement because of an adverse result. See State v. Morales, 116 N.J. Super. 538, 543 (App.Div. 1971), certif. den. 60 N.J. 140 (1972).
Defendant's next contention, also not raised below, is that the victim's out-of-court photographic and line-up identifications of defendant were so unduly suggestive as to have led to a substantial likelihood of misidentification and, inferentially, to have tainted her in-court identification. His claim is based on the inclusion of three photographs of defendant, instead of just one, in the array of 85 photographs; the victim's claimed lack of certainty in selecting two of the photographs; and the "unfairness" of the line up because it included one black man *8 and two men without mustaches, thereby "reducing the field" from which the victim would make her identification.
We have carefully reviewed the Wade hearing record and are satisfied that the challenges to the out-of-court identification procedures are without merit. Considering the number of photographs shown to the victim, we cannot say that the inclusion of three photographs of defendant was in any way unduly suggestive. There is no evidence in the record to indicate that the method of displaying the photographs, the photographs themselves or selection of the participants in the line up, unfairly focused the victim's attention on defendant. To the contrary, the Wade hearing testimony supports the conclusion that both procedures were fairly conducted and that the photographs and participants in the line up were generally of similar age and physical characteristics to defendant.
Defendant next contends that the trial judge erred in denying his motion for dismissal of the indictment on double-jeopardy grounds, arguing that since prosecutorial misconduct compelled him to make the mistrial motion during the first trial, he should not have been subjected to a second trial. We disagree.
When a defendant successfully moves for a mistrial, he may invoke the bar of double jeopardy in a second effort to try him only when the prosecutorial conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into making the motion. Oregon v. Kennedy, 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416, 427 (1982); N.J.S.A. 2C:1-9. As the court held in Oregon v. Kennedy:
Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion. [456 U.S. at 676, 102 S.Ct. at 2089].
We are completely satisfied that the trial judge's conclusion, that the detective's testimony regarding defendant's photograph being taken from an envelope containing photographs of "known sex offenders" was not intended to provoke defendant into moving for a mistrial, is supported by sufficient credible *9 evidence. State v. Johnson, 42 N.J. 146, 162 (1964). The evidence presented against defendant prior to the detective's remarks was substantial. The State had an interest in shielding the victim from the arduous and emotional task of having to testify again. It had no reason to attempt to abort the trial at that juncture. Defendant's suggestion that the detective's remarks were preconceived to provoke the mistrial is clearly meritless.
We have considered defendant's other arguments against a careful review of the entire record and conclude that they are devoid of merit. R. 2:11-3(e)(2).
Affirmed.