625 A.2d 1102

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. PETER MANN, DEFENDANT–APPELLANT.

Argued January 5, 1993—Decided June 15, 1993.

*Daniel V. Gautieri*, Assistant Deputy Public Defender, argued the cause for appellant (*Zulima V. Farber*, Public Defender, attorney; *Mr. Gautieri* and *Robert Brigliadoro*, Designated Counsel, on the briefs).

*Susan W. Sciacca*, Assistant Prosecutor, argued the cause for respondent (*John J. Fahy*, Bergen County Prosecutor, attorney).

*Deborah Bartolomey*, Deputy Attorney General, argued the cause on behalf of *amicus curiae*, Attorney General of New Jersey (*Robert J. Del Tufo*, Attorney General, attorney).

The opinion of the Court was delivered by

STEIN, J.

Defendant was convicted of two counts of sexual assault, *N.J.S.A.* 2C:14–2c(1), and one count of criminal sexual contact, *N.J.S.A.* 2C:14–3b. The Appellate Division affirmed his conviction and sentence, 254 *N.J.Super.* 332, 603 A.2d 533 (1992). We granted defendant's petition for certification, 130 *N.J.* 13, 611 A.2d 652 (1992), to consider the admissibility of evidence of defendant's post-arrest suicide attempt and the related issue of the appropriate jury charge concerning that evidence. In addition, as in *State v. Brunson*, 132 *N.J.* 377, 625 A.2d 1085 (1993), also decided today, this case presents the question of the admissibility of defendant's prior conviction of a similar offense to impeach his credibility.

I

On August 8, 1990, the victim, D.M., reported to the Westwood police that defendant, her first cousin, had sexually assaulted her two days earlier. According to D.M., defendant

entered the house while she was bathing in the second-floor bathroom. Defendant spoke to her from the first floor, and after a brief conversation he appeared at the open door of the bathroom. He commented on her physical development and began to fondle her breasts. Defendant then restrained D.M. by holding her legs, digitally penetrated her vagina, and engaged in an act of oral sexual contact. Subsequently, he carried the victim to her bedroom and forcibly engaged in sexual intercourse. Defendant then left the victim's home.

Shortly after his departure, the victim's sister and a friend arrived at the house. D.M. told them what had occurred. Two days later, D.M. told her mother about the assault. The victim's mother spoke to a rape-crisis-center counselor, who instructed D.M. to go to the hospital for an examination. While at the hospital, D.M. spoke with Investigator Petro of the Bergen County Prosecutor's Office about the incident.

Defendant was taken into police custody the following day. The arresting officer informed Investigator Petro that defendant had threatened to kill himself. As a result, Petro attempted to secure defendant during the interview by handcuffing one of defendant's hands to his chair. As Investigator Petro was informing defendant of his *Miranda* rights, Detective Wozener observed a piece of metal in defendant's free hand. Defendant cut his wrist with the metal and attempted to make a second cut, but the officers seized the piece of metal and restrained defendant. Defendant was then taken to Bergen Pines County Hospital for psychological observation.

The Bergen County Grand Jury returned a four-count indictment, charging defendant with three counts of sexual assault in violation of *N.J.S.A.* 2C:14–2c(1) and one count of criminal sexual contact in violation of *N.J.S.A.* 2C:14–3b. After a pretrial hearing, the court ruled admissible for impeachment purposes defendant's prior conviction for sexual assault.

During the trial, the State sought to elicit from Investigator Petro testimony regarding defendant's attempted suicide. Out

of the hearing of the jury, defense counsel argued that because defendant had a pre-existing propensity to commit suicide, defendant's attempted suicide while in custody was not probative of guilt. According to defense counsel, defendant had feigned suicide in an effort to prevent the police from extracting a false confession. The State contended that defendant's attempted suicide was analogous to flight and therefore probative of guilt. Defense counsel responded that because of defendant's predisposition to commit suicide, his post-arrest suicide attempt was consistent with a prior history of emotional disturbance and therefore did not imply consciousness of guilt. Replying to the trial court's inquiry about defendant's prior psychiatric history, the prosecutor observed that

> every time he's been arrested—he's been arrested on numerous occasions—and on some of those occasions he's attempted to commit suicide when he's arrested. It is only my understanding, your Honor, that he has instructed numerous people that he is never going back to jail and that this was a suicidal attempt which resulted as a direct result of his being incarcerated, arrested and facing incarceration.

The trial court ruled admissible evidence of defendant's attempted suicide holding that "evidence relating to an accused's attempt to commit suicide after his arrest is admissible in a criminal prosecution as a circumstance tending to show consciousness of guilt in the mind of defendant." 244 *N.J.Super.* 484, 486–87, 582 *A.*2d 1048 (Law Div.1990). The court also ruled that defendant was entitled to introduce evidence to counter the inference that the suicide attempt was evidence of defendant's consciousness of guilt. *Ibid.* Investigator Petro then testified about the suicide attempt, noting that defendant's wounds were superficial. On cross-examination, Petro acknowledged that another investigator had spoken to defendant's therapist, who had confirmed defendant's previous suicidal tendencies.

Defendant testified on his own behalf, admitting his prior conviction for sexual assault but explaining that the prior offense involved consensual sexual contact with a minor who he had thought was over the age of consent. Defendant claimed

that D.M. had seduced him and led him into her bedroom, but that no penetration had occurred. Defendant's testimony excluded any mention either of the suicide attempt or his prior history of suicidal episodes.

Both the State and the defense addressed the attempted-suicide evidence during their closing arguments. However, the trial court did not instruct the jury on the permissible use of that evidence. Neither the defendant nor the prosecutor requested such a charge and neither objected to its omission. At the State's request, the trial court supplemented its initial instruction to the jury with an explanation of the limited purpose for which prior conviction evidence had been admitted. *See N.J.S.A.* 2A:81–12; *State v. Sands,* 76 *N.J.* 127, 147, 386 *A.*2d 378 (1978).

The jury convicted defendant of two counts of sexual assault and one count of criminal sexual contact. For the sexual-assault convictions, defendant was sentenced to concurrent ten-year custodial terms with a five-year period of parole ineligibility. The court imposed a concurrent eighteen-month custodial term for the criminal sexual contact. Defendant appealed, challenging the admission of the suicide attempt and prior-conviction evidence and alleging prejudicial error in the trial court's instructions to the jury. Defendant also challenged the admission of fresh-complaint evidence. Claiming that the verdict was against the weight of the evidence, he alleged error in the trial court's failure to grant a new trial. Finally, defendant challenged his sentence as excessive.

In affirming defendant's conviction and sentence, the Appellate Division concluded that the evidence of attempted suicide had been admitted properly and the probative force of that evidence was a matter for jury determination. 254 *N.J.Super.* at 337, 603 *A.*2d 533. That court observed that

[o]rdinarily, when attempted suicide evidence is introduced, a jury instruction, tracking the flight charge, should be given as to the significance of the evidence, and the charge delivered should clearly apprise the jury that if they

credit defendant's explanation for his or her suicide attempt, no inference relevant to guilt should be drawn.

[*Ibid.*]

Nevertheless, the Appellate Division held that the absence of a jury instruction regarding the use of that evidence was not plain error. *Id.* at 338, 603 A.2d 533.

## II

Evidence of conduct of an accused subsequent to the offense charged is admissible only if probative of guilt. *See, e.g., State v. Rechtschaffer*, 70 *N.J.* 395, 413, 360 *A.*2d 362 (1976) (upholding admission of defendant's post-arrest threat to kill police informer and citing similar cases); *State v. Mills*, 51 *N.J.* 277, 286, 240 *A.*2d 1 (approving admission of evidence of unusual exhibitions of remorse for victims of crime as probative of defendant's guilty conscience), *cert. denied*, 393 *U.S.* 832, 89 *S.Ct.* 105, 21 *L.Ed.*2d 104 (1968). Evidence of flight or escape from custody by an accused generally is admissible as demonstrating consciousness of guilt, and is therefore regarded as probative of guilt. *State v. Long*, 119 *N.J.* 439, 499, 575 *A.*2d 435 (1990); *State v. Wilson*, 57 *N.J.* 39, 49, 269 *A.*2d 153 (1970); *State v. Sullivan*, 43 *N.J.* 209, 238–39, 203 *A.*2d 177 (1964), *cert. denied*, 382 *U.S.* 990, 86 *S.Ct.* 564, 15 *L.Ed.*2d 477 (1966); *State v. Andrial*, 203 *N.J.Super.* 1, 6, 495 *A.*2d 878 (App.Div.1985). Although this case concerns the probative value of a defendant's attempted suicide, the decisions implicating the use of subsequent conduct to infer consciousness of guilt most frequently involve a defendant's flight or escape, and their reasoning will inform our determination concerning the admissibility of evidence of attempted suicide.

Flight has been distinguished from mere departure. *Sullivan, supra*, 43 *N.J.* at 238–39, 203 *A.*2d 177. In *Sullivan*, we explained:

For departure to take on the legal significance of flight, there must be circumstances present and unexplained which, in conjunction with the leaving,

reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt.

[*Ibid.*]

A jury reasonably may infer a defendant's consciousness of guilt from an attempt to avoid accusation. *Wilson, supra,* 57 *N.J.* at 49, 269 *A.*2d 153 ("[T]he jury was required to find not only 'departure,' but the motive which would turn the departure into flight.").

Although authorities generally agree that evidence of flight is admissible when that evidence is probative of the defendant's intent to avoid prosecution, decisions vary with respect to the quality and persuasiveness of the proofs that must be elicited to support an inference of consciousness of guilt. For example, in *United States v. Harris,* the Ninth Circuit acknowledged the general admissibility of evidence of flight, noting that "[t]he relevance and the probative value of the evidence are, in the first instance, for the judge. His admission of the evidence is an implied finding of relevance and materiality." 792 *F.*2d 866, 869 (1986). The Fourth Circuit, however, has expressed doubt about the assumption that one who flees from the law necessarily is motivated by consciousness of guilt. *United States v. Foutz,* 540 *F.*2d 733, 740 (1976). In *Foutz,* the court noted that "the inference is further attenuated when the defendant has not actively sought to avoid capture." *Ibid.* In later cases the Fourth Circuit excluded evidence of flight in accordance with the caution sounded in *Foutz. See United States v. Hawkes,* 753 *F.*2d 355, 359 (4th Cir.1985) (reversing defendant's conviction based on insufficient evidence to support inference of flight to avoid capture and arrest). Those cases reaffirm the imperative that "each link in the chain of inferences leading to that conclusion is sturdily supported." *United States v. Beahm,* 664 *F.*2d 414, 420 (4th Cir.1981) (reversing conviction due to government's failure to substantiate adequately inference that defendant fled to avoid arrest).

The Fifth Circuit has developed a multi-step analysis to assess the probative value of flight evidence. It has observed that the probative value of that evidence

> depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.
>
> [*United States v. Myers*, 550 *F.*2d 1036, 1049 (1977).]

Adopting the *Myers* test, the Eighth Circuit, in *United States v. Peltier*, 585 *F.*2d 314, 323 (1978), *cert. denied*, 440 *U.S.* 945, 99 *S.Ct.* 1422, 59 *L.Ed.*2d 634 (1979), reviewed the sufficiency of the evidence supporting each step in the chain of inferences and concluded that the admission of flight evidence was proper. *See also United States v. Dillon*, 870 *F.*2d 1125, 1126–29 (6th Cir.1989) (applying *Myers* test). Thus, although courts agree that attempted-flight evidence is admissible, they differ in the standards for admission.

■ The potential for prejudice to the defendant and the marginal probative value of evidence of flight or escape mandate careful consideration of the nature of the evidence to be admitted and the manner in which it is presented. *United States v. Hankins*, 931 *F.*2d 1256, 1261–62 (8th Cir.) (describing proper treatment of escape evidence to avoid undue prejudice), *cert. denied*, —— *U.S.* ——, 112 *S.Ct.* 243, 116 *L.Ed.*2d 198 (1991).

■■ In those instances in which the trial court deems the evidence of flight admissible, it must instruct the jury carefully regarding the inferences the jury may draw from that evidence. The model jury charge on flight informs the jurors that

> [t]here has been some testimony in the case from which you may infer that the defendant fled shortly after the alleged commission of the crime. The defendant denies any flight, (or, the defendant denies that the acts constituted flight). The question of whether the defendant fled after the commission of the crime is another question of fact for your determination. Mere departure from a place where a crime has been committed does not constitute flight. If you find that the defendant, fearing that an accusation or arrest would be made against (him/her) on the charge involved in the indictment, took refuge in flight for the

purpose of evading the accusation or arrest on that charge, then you may consider such flight in connection with all the other evidence in the case, as an indication or proof of consciousness of guilt. Flight may * * * be considered as evidence of consciousness of guilt [only] if you should determine that the defendant's purpose in leaving was to evade accusation or arrest for the offense charged in the indictment.

[New Jersey Supreme Court Committee on Model Jury Charges, Criminal, *Model Jury Charges, Criminal—Flight* (Nov.1991).]

That instruction is essentially the same as the instruction we approved in *Sullivan, supra,* 43 *N.J.* at 238–39, 203 *A.*2d 177. An adequate jury instruction would require the jury first to find that there was a departure, and then to find a motive for the departure, such as an attempt to avoid arrest or prosecution, that would turn the departure into flight. *Wilson, supra,* 57 *N.J.* at 49, 269 *A.*2d 153. If a defendant offers an explanation for the departure, the trial court should instruct the jury that if it finds the defendant's explanation credible, it should not draw any inference of the defendant's consciousness of guilt from the defendant's departure. *State v. Leak,* 128 *N.J.Super.* 212, 217, 319 *A.*2d 740 (App.Div.), *certif. denied,* 65 *N.J.* 565, 325 *A.*2d 699 (1974).

Like evidence of flight, evidence of a defendant's suicide attempt that follows the alleged commission of an offense generally is admitted. *McKinney v. State,* 466 *A.*2d 356, 359 (Del.1983); *State v. Mitchell,* 450 *N.W.*2d 828, 831–32 (Iowa 1990); *State v. Brown,* 128 *N.H.* 606, 517 *A.*2d 831, 838 (1986); *State v. Hunt,* 305 *N.C.* 238, 287 *S.E.*2d 818, 823 (1982). In *State v. Jaggers,* our former Court of Errors and Appeals held that evidence that the accused had attempted to take his own life while in custody and charged with a crime was properly admitted to show his intent to escape further prosecution. 71 *N.J.L.* 281, 282, 58 *A.* 1014 (1904). In admitting such evidence, courts often have relied on the traditional view that a defendant may attempt suicide because of an inability to endure the prospect of prosecution and punishment. Alternatively, attempted suicide has been regarded as evidence of a consciousness of guilt. Daniel Webster once described suicide as a

confession by conduct compelled by the overpowering force of a guilty conscience.

> Meantime the guilty soul cannot keep its secret. * * * It betrays his discretion, it breaks down his courage, it conquers his prudence. When suspicions from without begin to embarrass him, and the net of circumstances to entangle him, the fatal secret struggles with still greater violence to burst forth. It *must* be confessed! It WILL be confessed! There is no refuge from confession, but suicide,—and suicide is confession.
>
> [*Commonwealth v. Knapp*, 7 *American State Trials* 395 (1830) (*quoted in* 2 *Wigmore on Evidence* § 276, at 132 (Chadbourn rev.1979).]

■ As with flight, the evidence must be sufficient to support the inference that a defendant's attempted suicide is evidence of consciousness of guilt. *Cf. Pettie v. State*, 316 *Md.* 509, 560 *A.*2d 577, 582 (1989) (finding facts insufficient to support conclusion that defendant tried to kill himself and that attempt was in response to criminal conduct but not reaching ultimate question of whether evidence of attempted suicide is admissible as analogous to flight). *But see Brown, supra*, 517 *A.*2d at 838 (finding that evidence of suicidal thoughts prior to commission of crime affect, at most, weight to be given evidence).

Accusation and the threat of prosecution and punishment may impel a defendant to attempt suicide. Alternatively, an urge to confess or repent for a guilty deed may materialize as an admission by suicidal conduct. However, other factors may motivate or contribute to an accused's decision to attempt suicide. *Pettie, supra*, 560 *A.*2d at 582 ("As we see it, however, attempted suicide cannot easily be circumscribed, as that act is subject to innumerable interpretations."). Instead of seeking to avoid punishment, a defendant who attempts suicide may, for reasons unrelated to the crime charged, choose to inflict upon himself or herself a punishment more severe than that following a conviction of the charge. *State v. Coudette*, 7 *N.D.* 109, 72 *N.W.* 913, 915 (1897) (rejecting evidence of attempted suicide as corroboration of accomplice testimony based on likelihood that Sioux Indian would commit suicide when incarcerated to avoid confinement regardless of guilt); *see also People v.*

*Carter,* 48 *Cal.*2d 737, 312 *P.*2d 665, 671 (1957) (finding error in exclusion of testimony that offered alternative basis for defendant's attempted suicide); *Meggison v. State,* 540 *So.*2d 258, 259 (Fla.Dist.Ct.App.1989) (holding that admitting evidence of attempted suicide was error when defendant had already pled guilty and attempt was not probative of guilt).

Furthermore, in some cases, whether a defendant actually attempted suicide may not be clear. *Pettie, supra,* 560 *A.*2d at 582 (concluding that State had failed to produce convincing evidence that valid suicide attempt had occurred). Some other explanation may exist for any wounds sustained by a defendant. *See, e.g., State v. Koedatich,* 112 *N.J.* 225, 241, 548 *A.*2d 939 (1988) (admitting evidence tending to show that defendant's wounds were self-inflicted but not evidence of attempted suicide), *cert. denied,* 488 *U.S.* 1017, 109 *S.Ct.* 813, 102 *L.Ed.*2d 803 (1989).

### III

The possible ambiguity of an accused's suicide attempt requires a careful consideration of the probative value such evidence offers. A suicide attempted to "flee" arrest or prosecution may, in some circumstances, reveal a defendant's consciousness of guilt. However, a defendant's psychological, social or financial situation may underlie a suicide attempt. In addition, introduction of evidence of that attempt may be unduly prejudicial under certain circumstances.

To ensure a proper balancing of the interests at stake, a trial court ordinarily should hold an *Evidence Rule* 8 hearing to determine whether evidence of a defendant's suicide attempt is sufficient to support a reasonable inference that the suicide attempt was prompted by a desire to avoid the ordeal of prosecution and punishment or was otherwise evidence of consciousness of guilt. As with evidence of flight, the chain of inferences leading from an attempted suicide to the inference of consciousness of guilt must be soundly supported. *Supra* at

419–420, 625 *A.*2d at 1106. The court should consider alternative explanations of the suicide attempt offered by a defendant, as well as the possible prejudice to a defendant from the introduction of the attempted suicide evidence or from a defendant's effort to offer a different explanation of that evidence. The trial court also should ensure that a defendant has been given adequate notice of the State's intention to offer proof of the attempted suicide.

If evidence of a defendant's suicide attempt is admitted, the trial court should charge the jury on its proper use. The jury should be instructed that it first must find that an actual suicide attempt had occurred. It should then consider whether that attempt was made to avoid the burdens of prosecution and punishment. The jury should also determine whether defendant's attempted suicide demonstrated consciousness of guilt. The trial court should instruct the jury that if it credits any alternative explanation offered by the defendant, it may not infer consciousness of guilt from the evidence of a suicide attempt.

## IV

The record discloses that defendant has a history of suicidal tendencies. A week before the assault on D.M., defendant had been hospitalized following a suicide threat. He had also received treatment for substance abuse and other mental health disorders. Although testimony at trial indicated that defendant had visited his son on the date of the assault, other evidence suggests that he had been upset about a restraining order preventing contact with the child. Following his arrest for the sexual assault against D.M., while in police custody, defendant cut his wrist with a piece of metal. The wound was superficial, and the metal was taken from him immediately to prevent him from injuring himself further. The trial court admitted evidence of the suicide attempt without the benefit of

a hearing at which defendant could have introduced evidence of his mental-health history.

The admissibility of attempted-suicide evidence has not been questioned since *Jaggers, supra,* 71 *N.J.L.* 281, 58 *A.* 1014, and the issue of the appropriate jury charge is one of first impression in New Jersey. We note that defendant did not introduce evidence to counter the inference of consciousness of guilt, nor did he request a jury charge in respect of the suicide evidence. Nevertheless, we conclude that the lack of a *Rule* 8 hearing enabling the trial court to evaluate adequately the admissibility of the suicide-attempt evidence and the omission of a jury charge on the proper use of the evidence of defendant's suicide attempt were clearly capable of producing an unjust result. *R.* 2:10–2. We therefore reverse defendant's conviction and remand for a new trial. On retrial, the court should determine, after a *Rule* 8 hearing, whether the jury reasonably could infer from the evidence that there was an actual suicide attempt and that defendant attempted to commit suicide because of his unwillingness to endure prosecution and punishment. If the trial court admits the attempted-suicide evidence, the jury should be charged on the findings it must make to support any inference regarding defendant's consciousness of guilt.

V

Defendant alleges several other errors. Because we reverse defendant's conviction on other grounds, we need not address those contentions in detail. Prior to trial, the court ruled that defendant's prior conviction for sexual assault would be admissible for impeachment purposes. Defendant testified at trial and admitted that conviction. On retrial, if defendant should choose to testify, the trial court should be guided by our holding in *State v. Brunson, supra,* 132 *N.J.* at 391–392, 625 *A.*2d at 1092, permitting the State to introduce only the degree

and date of defendant's prior conviction for sexual assault as bearing on defendant's credibility.

The victim's sister and a friend testified that the victim had told them about the assault shortly after it had occurred. In addition, Investigator Petro testified that he had met with the victim at the hospital and that she had reported the assault to him. Defendant contends that the admission of that fresh-complaint evidence was error. We find no merit in that contention. On retrial, the fresh complaint testimony may be admitted in accordance with *Evidence Rule* 63, as evidence that the victim promptly had complained to others about defendant's sexual assault. *State v. Hill*, 121 *N.J.* 150, 163–65, 578 *A*.2d 370 (1990). Defendant's claims regarding the denial of his motion for a new trial and the excessiveness of his sentence are moot.

Reversed and remanded.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.