**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2190-19T4

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

ROBERT SILVERMAN, a/k/a
LEVANCE CHRISTOPH, and
LEVANCE CHRISTOPH J.,

    Defendant-Respondent.

_____

        Submitted August 25, 2020 –
        Decided September 8, 2020

        Before Judges Geiger and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Law
        Division, Essex County, Indictment Nos. 18-07-2273
        and 18-07-2274.

        Theodore N. Stephens II, Acting Essex County
        Prosecutor, attorney for appellant (Frank J. Ducoat,
        Special Deputy Attorney General/Acting Assistant
        Prosecutor, of counsel and on the briefs).

Joseph E. Krakora, Public Defender, attorney for respondent (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

The State appeals from Law Division judgments dismissing two consolidated indictments with prejudice following a mistrial. For the reasons that follow, we reverse.

We derive the following factual allegations from the testimony adduced at trial. L.S.[1] began dating defendant in 2013. Eventually defendant moved into her residence. Her sons, ages nine and seventeen, also lived there.

L.S. learned during a family function with defendant's relatives that defendant was using a fictitious name. At that same gathering, defendant became physically upset with his daughter and flipped over a patio table in the presence of the children.

Following this incident, defendant's behavior toward L.S. changed from respectful to obsessive and controlling. He stopped working and also began incessantly calling L.S. at work. In December 2017, L.S. decided to end the relationship. Defendant moved out but had to be escorted from the house.

---

[1] We refer to the victim by initials to protect her privacy. R. 1:38-3(b)(12).

That same month, defendant returned to L.S.'s residence and began screaming that he was "going to have . . . the car torched, bitch."  He then fled and called L.S. leaving a threatening voicemail.  L.S. was concerned for her safety because her sons were in Vermont and defendant knew she was alone.  L.S. reported the incident to the police.

Beginning in late January 2018, defendant began receiving approximately twenty-five calls a day on her cell phone from defendant.  She also received phone calls from him at work.  During the calls, defendant screamed and threatened to call her boss and come to her workplace.  The phone calls became so frequent that L.S. had to disconnect her work phone each day.

On January 22, 2018, defendant called L.S. at work and threatened to "fuck up" her older son and set her house on fire.  Defendant reported the incident to police and gave a statement.

In July 2018, an Essex County Grand Jury returned two indictments against defendant.  Indictment No. 18-07-2273 charged defendant with third-degree terroristic threats, N.J.S.A. 2C:12-3(b), for his conduct in January 2018.  Indictment No. 18-07-2274 also charged defendant with third-degree terroristic threats, N.J.S.A. 2C:12-3(a), for additional threats he made in May 2018.

A-2190-19T4

The trial court granted the State's motion to consolidate the two indictments for trial. It also granted the State's motion to permit references to prior incidents of harassing conduct directed at L.S. by defendant. The judge concluded that the jury should hear the full context of defendant's relationship with L.S., which was relevant to defendant's intent. The judge made clear, however, that any evidence that L.S. obtained prior restraining orders against defendant was inadmissible and to be avoided.

When the case proceeded to trial, the State called L.S. as its first witness. At sidebar the judge expressed his concern about mentioning the restraining orders and indicated he would allow leading questions but "if the witness brought out anything about the restraining order that I would dismiss the case with prejudice." The prosecutor stated she did not need to speak to L.S. again because L.S. "was very clear about it, she wouldn't do it." During her direct examination, however, L.S. testified that she told a police lieutenant about the two restraining orders. Defendant immediately moved for a mistrial. Following a brief sidebar, the judge declared a mistrial.

After the court discharged the jury, defense counsel requested that the case be dismissed with prejudice. Counsel pointed to the prior conferences and ruling regarding disclosure of the restraining orders. Counsel also emphasized how

4

long the case had been pending and its negative impact on defendant. In response, the prosecutor argued the case should not be dismissed because it was an innocent error by L.S.:

> I told my victim that, I told my officers that, my victim was very clear on that. However, she came in here today, she had not seen this defendant since the whole incident took place back in . . . December, January 2018. She was clearly very upset, she couldn't even get the initial year right that she actually met him. She cried several times, she interrupted . . . , she couldn't even go on with her testimony several times. What she did was clearly innocent, she did not mean to say that, . . . she knew there was absolutely no way that could come out. I told her the consequences, the potential consequences of that, she totally understood what I'm saying—what I said but she was very, very rattled today and we had to take a break five minutes into her testimony and there were other times where she hesitated. She was clearly distraught and overwrought by this entire situation.

The prosecutor conceded that the mistrial was appropriate but contended the indictments should not be dismissed with prejudice because L.S. did not "deliberately" bring up the restraining orders. The prosecutor emphasized that L.S. "was clearly emotionally distraught by seeing [defendant], by hearing the tape and by having to relive this terrible period of time in her life." She averred that L.S. "did not want a mistrial" or to have to go through another trial and "came here to testify honestly as to what happened to her."

5

The judge stated he had "no doubt" that the prosecutor told L.S. not to mention the restraining orders. The judge then explained that he was concerned when the testimony reached "the time frame when the restraining order was issued." The judge stated that he had "forewarned" the prosecutor because he wanted to avoid that consequence and that if L.S. mentioned the restraining orders there would be a mistrial and dismissal with prejudice.[2] He granted defendant's application, dismissing both indictments with prejudice. This appeal followed.

The State raises the following single point for our consideration:

> THE TRIAL COURT ERRED IN IMPOSING THE DRACONIAN REMEDY OF DISMISSING DEFENDANT'S INDICTMENTS WITH PREJUDICE. WHILE A MISTRIAL MAY HAVE BEEN APPROPRIATE, THE JUDGE WENT TOO FAR WHEN HE FOREVER BARRED THE STATE FROM PROSECUTING DEFENDANT BY DISMISSING THE CASES "WITH PREJUDICE."

"The decision to grant a mistrial 'to prevent an obvious failure of justice' always remains within the sound discretion of the trial judge." State v. Bitzas,

---

[2] The judge did not expressly warn the prosecutor that the indictments would be dismissed with prejudice if L.S. mentioned the restraining orders. Instead, he reminded the prosecutor at sidebar that the restraining order "could not come out" and warned that if it did, "you're going to have a major problem" because "jeopardy could attach."

A-2190-19T4

451 N.J. Super. 51, 79 (App. Div. 2017) (quoting State v. Smith, 224 N.J. 36, 47 (2016)). We discern no abuse of discretion in declaring a mistrial. However, not every mistrial implicates double jeopardy, preventing the State from re-trying the defendant. State v. Gallegan, 117 N.J. 345, 352-53 (1989); Bitzas, 451 N.J. Super. at 80.

The principal concern is whether the mistrial "is granted in order to allow the prosecution to obtain a tactical advantage." Gallegan, 117 N.J. at 357 (citing Crawford v. Fenton, 646 F.2d 810 (3d Cir. 1981)). When "prosecutorial misconduct provokes a court into granting a mistrial," "principles of double jeopardy prevent a retrial, but there must be some showing of bad faith on the part of the prosecutor." Ibid. (citations omitted). Accordingly, where the testimony of a prosecution witness "causes a mistrial, there is no bar to retrial where there is no showing of the proscribed intent." Cannel, N.J. Criminal Code Annotated, cmt. 6 on N.J.S.A. 2C:1-9(d) (2020) (citations omitted).

Stated another way, it is "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Gallegan, 117 N.J. at 358 (quoting Oregon v. Kennedy, 456 U.S. 667, 676 (1982)). In Kennedy, the

Supreme Court "limited the circumstances under which a defendant may invoke double jeopardy to 'those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.'" State v. DeMarco, 211 N.J. Super. 421, 424 (App. Div. 1986) (quoting Kennedy, 456 U.S. at 679); accord State v. Andrial, 203 N.J. Super. 1, 8 (App. Div. 1985).

Our careful review of the record reveals defendant has not demonstrated that the State engaged in misconduct, much less goaded the defense to seek a mistrial. Nor do we find that "the prosecution intended to subvert defendant's protection against double jeopardy by prosecutorial misconduct." Gallegan, 117 N.J. at 358. On the contrary, the judge had "no doubt" that the prosecutor informed L.S. not to mention the restraining orders during her testimony. The prosecutor's statement that L.S. understood that she should not do so is uncontroverted.

We are likewise unpersuaded by defendant's argument that the prosecutor invited L.S. to mention the restraining orders. The question posed by the prosecutor did not elicit or encourage L.S.'s disclosure of the restraining orders to gain a tactical advantage. The prosecutor simply asked: "What did you do after receiving that card?" L.S. answered, "I went to the Jersey City Police

Department because that's where I work, drove straight there after work and went in and spoke to the Lieutenant and told him of the two restraining orders." We find no evidence that the prosecutor engaged in bad faith to provoke defendant into moving for a mistrial because L.S. was having difficulty testifying.

Defendant's contention that the State "welcomed the mistrial with open arms" is also not supported by the record. The State did not request or consent to a mistrial. The prosecutor's statement that "[a] mistrial was properly called" was made after the judge had already declared the mistrial and discharged the jury.

In sum, we discern no abuse of discretion in granting a mistrial but hold that dismissal of the indictments with prejudice was error. A retrial does not offend defendant's protection against double jeopardy. We reverse the dismissal and remand for a new trial.

Lastly, we address the State's request that we direct that this matter assigned to a different judge on remand. The judge's expressed distrust of L.S. related to risk he perceived that she would disclose the restraining orders, not to her credibility as a witness. The record does not "suggest that [the judge] favors one side over the other, or has a view regarding the credibility of a party or a

A-2190-19T4

witness."  <u>State v. O'Brien</u>, 200 N.J. 520, 523 (2009).  Accordingly, assignment to a different judge is not required.

Reversed and remanded for retrial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2190-19T4