Filed 6/16/25  P. v. Santiago CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MILTON ARTURO SANTIAGO,<br><br>    Defendant and Appellant. | D082640<br><br><br><br>(Super. Ct. No. SCS310806) |


APPEAL from a judgment of the Superior Court of San Diego County, Dwayne K. Moring, Judge.  Affirmed.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Emily Reeves, Deputy Attorneys General, for Plaintiff and Respondent.


A jury found Milton Arturo Santiago guilty of four counts of committing a lewd act upon a child (Pen. Code, § 288, subd. (a)), and one count of

committing a forcible lewd act upon a child (*id.*, § 288, subd. (b)(1)).  Santiago was sentenced to an eight-year prison term.

Santiago contends that the trial court prejudicially erred in allowing the jury to hear two statements made during a recorded telephone call between him and the victim's mother.  We conclude that the trial court was within its discretion to admit the statements into evidence, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Santiago was convicted of committing a series of lewd acts against a 13-year-old girl (Girl) on September 29, 2018, which involved touching Girl's breasts, thighs and vagina.  Santiago had been in an on-again, off-again relationship with Girl's mother (Mother) for several years.  Mother and Santiago had a two-year-old son together (Son), and they shared custody of him.

Girl reported the lewd acts to Mother and another family member immediately after they occurred.  Mother contacted the police, who arranged for Girl to undergo a forensic medical examination.

Santiago was charged with five counts of committing a lewd act upon a child (Pen. Code, § 288, subd. (a)), and one count of committing a forcible lewd act upon a child (*id.*, § 288, subd. (b)(1)).  One of the five lewd act counts (count 2) was pled as a lesser included offense of the forcible lewd act alleged in count 1.

At trial, among other things, the jury heard testimony from Girl describing the lewd acts, and it learned that swabs taken during Girl's forensic medical examination showed Santiago's DNA on Girl's right breast.  In addition, DNA consistent with Santiago was found on Girl's vagina, mons

2

pubis, and anus, although that DNA was also consistent with a male paternal relative of Santiago, such as Son.

Santiago testified and denied committing any lewd acts against Girl. Defense counsel argued to the jury that Santiago's DNA or the DNA of Son may have been found on Girl's body because, as Santiago testified, Girl may have dried herself after a shower with Santiago's pre-used towel, and Son may have also used that same towel before Girl did.

The jury convicted Santiago of committing all of the lewd acts alleged against him. Because the jury found Santiago guilty of the forcible lewd act alleged in count 1, it did not return a verdict on the lesser included offense in count 2, and that count was subsequently dismissed. Santiago was sentenced to prison for a term of eight years.

## II.

## DISCUSSION

### A. *The Recorded Telephone Call*

Two days after the incident, on October 1, 2018, Mother made a recorded telephone call to Santiago, at the direction of a police detective, in an attempt to obtain an admission from Santiago. Santiago contends that, pursuant to Evidence Code section 352, the trial court should have excluded two groups of statements made during that call. We set forth the entire transcript of the recorded conversation, with the challenged statements indicated by italics.

"[Santiago]:  Hello?
"[Mother]:  Hello?
"[Santiago]:  [Mother]?  Where's my son?
"[Mother]:  He's with my brother.
"[Santiago]:  Huh?
"[Mother]:  He's fine.  He's with me.

3

"[Santiago]:     Why are you keeping my son from me?

"[Mother]:     [Santiago], I don't want to be around you right now.

"[Santiago]:     You're gonna keep my son from me? [¶] . . . [¶] You're gonna keep [Son] from me?

"[Mother]:     Do you really think that you should be around them - really - are you . . . .

"[Santiago]:     What?

"[Mother]:     [Santiago] are you - I feel sick to my fucking stomach right now.  You need to fucking tell me what happened.  Why would you do that?

"[Santiago]:     I didn't do anything [Mother].

"[Mother]:     Don't fucking lie.  Are you fucking kidding me?  Why the fuck would you do that?  She fuckin' loves you.  You know that [Santiago].  She fuckin' trusted you.  You fuckin' just ruined her whole fuckin' life.  Do you realize that?  What is your problem?

"[Santiago]:     Are you gonna give me my son [Mother]?

"[Mother]:     Is there any time right now. . . . I need . . .

"[Santiago]:     What?

"[Mother]:     I need my family there with me.

"[Santiago]:     What?

"[Mother]:     I don't want [Son] with you right now.

"[Santiago]:     You're keeping my son from me, right?

"[Mother]:     Are you fuckin' kidding me, you know what you did.  You know what the fuck you did.  No, I don't want [Son] around you, right now.  None of us want to be around you right now.  Why would you do that?  [Santiago], why did you do that?  You know [Girl's] been through enough shit - [Santiago] you have to talk to talk to [Girl].  You have to apologize to her.

"[Santiago]:     *I'm gonna kill my myself then.*

4

"[Mother]:      What?

"[Santiago]:    (Unintelligible)

"[Mother]:      [Santiago], I want you to talk to [Girl] and apologize to her.  Were you fuckin' drunk or something, like what happened?  Why would you . . . . ?  You need to apologize to her.  This is gonna ruin her life.  [Santiago], please . . . .

"[Santiago]:    What (unintelligible).

"[Mother]:      Why would you do this to me?  Why would you do this to our family?  You just ruined everything.  You just fucked up everyone's world.  What happened, w-what, why were you, were you that fucking drunk?  [Santiago], you have to apologize to [Girl].  You have to talk to her.

"[Santiago]:    I'll talk to her.

"[Mother]:      She's afraid of you right now.  What happened?  Why did, what did you drink?  What were you doing?  Why would you ever do that?  You never ever have done this.  I mean, I trusted you.  What happened?

"[Santiago]:    Nothing happened.

"[Mother]:      *She wouldn't just make some shit up [Santiago].  [Girl] is not lying to me.*  You might think nothing happened if it was fucking nothing to you, but it was something.  [Santiago], please.  Why did you do this?

"[Santiago]:    [Son] (unintelligible).

"[Mother]:      [Santiago], can you please talk to me right now, like seriously.  Do you know how fucked up I am right now?  I've been . . .

"[Santiago]:    No.

"[Mother]:      . . . fucking sick to my stomach.  I can't eat.  I can't sleep.

5

| "[Santiago]: | Where's my son though?  Where's my son?  Where's my son?  Where's [Son]? [Mother], where's [Son]? |
|---|---|
| "[Mother]: | [Santiago], I'm not letting you have [Son] right now.  You just did some fucked up shit.  I'm not giving you [Son] right now. |
| "[Santiago]: | Fine.  I'll never see him again then.  Will that make it better? |
| "[Mother]: | How does that fucking make it better? |
| "[Santiago]: | I'll never see [Son] again.  Okay?  Bye." (Italics added.) |

B.    *Applicable Legal Standards*

Santiago contends that Evidence Code section 352 required the trial court to redact from the recording of the telephone call the statements we have italicized.

Evidence Code section 352 provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Evid. Code, § 352.)  " 'Evidence is substantially more prejudicial than probative . . . [only] if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome." ' "  (*People v. Tran* (2011) 51 Cal.4th 1040, 1047.)  " ' "Prejudice," as used in Evidence Code section 352, is not synonymous with 'damaging.'  [Citation.] Rather, it refers to evidence that uniquely tends to evoke an emotional bias against the defendant as an individual, and has little to do with the legal issues raised in the trial.' "  (*People v. Miles* (2020) 9 Cal.5th 513, 587 (*Miles*).)  The prejudice that section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.  (*People v. Baker* (2021) 10 Cal.5th 1044, 1089.)

6

In applying section 352, the trial court enjoys " 'broad discretion,' " and " '[a] trial court's discretionary ruling under . . . section 352 will not be disturbed on appeal absent an abuse of discretion.' " (*People v. Clark* (2016) 63 Cal.4th 522, 586.) " ' "Under the abuse of discretion standard, 'a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Chhoun* (2021) 11 Cal.5th 1, 26.)

C.      *Santiago's Statement Threatening Suicide*

The first statement that Santiago contends should have been excluded from evidence pursuant to Evidence Code section 352 is his reply, "I'm gonna kill my myself then." Santiago made the statement immediately after Mother told him that she did not presently want Son to be around Santiago, that "[n]one" of them wanted to be around Santiago, and that he should apologize to Girl.

During motions in limine, defense counsel moved to exclude the statement from evidence, arguing that it was "extremely prejudicial."[1] The trial court ruled that it would allow the jury to hear the statement.

Santiago contends that the trial court abused its discretion by failing to exclude the statement from evidence pursuant to Evidence Code section 352 because of its limited probative value and the likelihood of confusing and misleading the jury. He argues, "Looking at the totality of the controlled call conversation, the probative value of [Santiago's] suicidal statement is quite

---

[1]     Defense counsel never expressly cited Evidence Code section 352 in seeking to exclude the statement from evidence, but based on counsel's discussion of the alleged prejudicial nature of the statement, we infer that he intended Evidence Code section 352 as the basis for the objection.

limited. Rather than the threat being related to the truth of [Girl's] accusations . . . the suicide threat is more properly characterized as a response to being separated from his son indefinitely and the lack of certainty regarding his son's whereabouts. Thus, the admission of this evidence was likely to confuse and mislead the jury." According to Santiago, the statement was prejudicial because "it confused and misled the jurors into finding that the statement was indicative of a guilty conscience." In his reply brief, Santiago additionally argues that his threat to commit suicide would have "prejudicial impact" because of "the stigma [that] still surrounds the subject and some jurors may have harbored a bias against the perceived weakness of character or morals of persons who seek to take their own lives."

Application of Evidence Code section 352 in this context requires a balancing of the "probative value" of the evidence against the danger of "undue prejudice." (Evid. Code, § 352.) Turning first to the probative value of the statement, the trial court reasonably could conclude that, in the context of the telephone call as a whole, Santiago's threat to kill himself was probative of whether Santiago intended to dispute Girl's accusations. Immediately before Santiago's statement, Mother said, "Are you fuckin' kidding me, you know what you did. You know what the fuck you did. No, I don't want [Son] around you, right now. None of us want to be around you right now. Why would you do that? [Santiago], why did you do that? You know [Girl's] been through enough shit - [Santiago] you have to talk to talk to [Girl]. You have to apologize to her." Santiago chose to respond by saying "I'm gonna kill my myself then." Significantly, he did not respond by denying Girl's accusations. Although, Santiago did state, at other points during the telephone call, "I didn't do anything [Mother]" and "Nothing happened," the trial court was well within its discretion to conclude that an accurate

8

assessment of Santiago's state of mind required the jury to hear the full conversation, including the instances where Santiago could have denied Girl's accusations but chose not to do so.

Moreover, to the extent that Santiago's statement could be interpreted as a *genuine* statement of suicidal intent rather than only a tactic to get Mother to let him see Son, the statement was probative for the additional reason that it could give rise to an inference that Santiago had acknowledged his guilt. If Santiago was genuinely telling Mother that he had chosen suicide as the best approach to dealing with an accusation of criminal conduct that was destroying his family relationships, a juror might draw the inference that Santiago had resigned himself to acknowledging his guilt and accepting the consequences of his actions.

As to whether allowing the jury to hear the statement created a danger of undue prejudice, the trial court was within its discretion to conclude that any prejudice was minimal in comparison to the value of giving the jury a full account of the conversation between Mother and Santiago. Santiago contends that the jury, upon hearing him talk about killing himself, might have ascribed to him the "weakness of character or morals of persons who seek to take their own lives." However, because the evidence at issue here is only a brief comment *threatening* suicide in the course of a contentious telephone call, rather than *an actual attempt* at suicide, we perceive minimal risk that the statement could invoke an " 'emotional bias against the defendant as an individual.' " (*Miles, supra*, 9 Cal.5th at p. 587.) Santiago also contends that the statement might confuse and mislead the jury, who might interpret it as an admission of guilt instead of "a response to being separated from his son indefinitely and the lack of certainty regarding his son's whereabouts." Santiago's argument is not persuasive because the

9

entire telephone conversation was played for the jury. The jury could assess for itself, based on the totality of that conversation, the reason for Santiago's statement and whether it was tied to Mother's withholding Son from him or some other consideration.

Santiago discusses case law from other jurisdictions, which considers the circumstances under which evidence of a defendant's suicide attempt is admissible at trial. (See, e.g., *State v. Martin* (Hawaii 2020) 463 P.3d 1022, 1037–1041; *State v. Mann* (1993) 625 A.2d 1102.)[2] However, as Santiago acknowledges, those authorities hold that it is appropriate for the trial court to perform a balancing analysis similar to that required under Evidence Code section 352 to determine whether to admit the evidence. (*Martin*, at p. 1040; *Mann*, at p. 1108.) That is precisely the analysis that the trial court performed here.[3]

In sum, we conclude that the trial court did not abuse the discretion afforded to it under Evidence Code section 352, when it allowed the jury to hear Santiago's threat to kill himself during the recorded conversation with Mother.

---

[2] Santiago also cites California case law, but he contends that any relevant discussion in that authority constitutes dicta, and he accordingly does not attempt to rely on it to support his argument. (See, e.g., *People v. Pettigrew* (2021) 62 Cal.App.5th 477, 498 [discussing California authority].)

[3] We note that, in any event, Santiago's authorities are not particularly relevant here because they consider the admissibility of a defendant's *actual* suicide attempt. Here, in contrast, Santiago did not actually attempt suicide; instead the issue was whether his statement threatening suicide should be redacted from a recorded telephone conversation that was to be played for the jury.

D.    *Mother's Statement About Girl's Credibility*

The second statement at issue is Mother's assertion about Girl: "She wouldn't just make some shit up [Santiago].  [Girl] is not lying to me."

We begin with some background on the trial court's decision to admit that statement.  During motions in limine, defense counsel sought a ruling that "the parents of [Girl], deputies, law-enforcement employees, police officers, psychiatrists, psychologists, Child Protective Services workers, licensed clinical social workers, social workers, therapists, counselors, or any other witness . . . cannot state their opinion about the truthfulness of [Girl's] allegations."  The People stated that they did not intend to elicit such evidence, and the trial court granted the motion.

Thereafter, before the beginning of trial, the People brought to the trial court's attention that they intended to play the recorded telephone conversation for the jury, which would include the statement we have set forth above, in which Mother stated her opinion that Girl was not lying to her.  The People took the position that presenting the statement to the jury would not violate the trial court's in limine ruling because the statement would not be offered for its truth but, instead, to show Santiago's reaction.

When the People raised the issue with the trial court, defense counsel asked the trial court to redact the statement from the recording of the conversation that would be played for the jury.  Defense counsel also stated that if the trial court did not agree to do so, it should at least provide a limiting instruction to the jury.  In making those comments, defense counsel did not cite any authority, including Evidence Code section 352, or give any reason for the requests.  The trial court ruled that it would admit the statement into evidence, but that it would give a limiting instruction.

11

The recorded telephone call was played for the jury on the afternoon of the first day of trial during Mother's testimony. Because defense counsel had not yet provided the trial court with the text of the limiting instruction, the trial court did not read it to the jury until the beginning of the next trial day. At that point, the trial court instructed the jury as follows: "Before we begin, I do have a limit[ing] instruction that the parties agreed to. On Wednesday afternoon, a control phone call between [Mother] and Mr. Santiago was played to you in court. At one point during the call, [Mother] told Mr. Santiago quote, 'She, [Girl], wouldn't just make some shit up, [Santiago],' period. '[Girl] is not lying to me,' period, quote. [¶] You are not to consider or put any weight on the statements by [Mother] regarding her vouching for the veracity of [Girl's] allegations against Mr. Santiago. You can only consider [Mother's] statements to Mr. Santiago during the control call as they rela[te] as to how Mr. Santiago replied to [Mother] during the call. [¶] So in other words, take it in the context of the conversation and the purpose of the conversation. A witness can never go into court and say that Witness A was telling the truth or anything like that. You can't testify in that manner[,] but just consider the context of the telephone call and its purpose."

Santiago now argues that the trial court should have excluded the statement pursuant to Evidence Code section 352. Although Santiago acknowledges that the trial court instructed the jury it was not to consider the statement as evidence vouching for Girl's veracity, and he concedes that "in general . . . [his] reactions to [Mother's] statements and representations [were] relevant," Santiago argues that the trial court erred in allowing the jury to hear the statement because its "probative value as to [Santiago's] reaction was outweighed by [its] prejudicial effect under Evidence Code section 352." Santiago argues that, under Evidence Code section 352, the

12

statement had "little if any probative value" because, even if the statement was simply redacted from the recorded telephone call, the jury "would have had the same opportunity to evaluate [Santiago's] 'reaction' in the context of the controlled call" and "the jury would not have noticed anything was missing." As for the prejudicial nature of the statement, Santiago argues that the limiting instruction was "unlikely to have been successful."[4]

We reject Santiago's argument on two independent grounds. First, because Santiago did not rely on Evidence Code section 352 when asking the trial court to redact the statement from the recording of the telephone call, he has forfeited his ability to argue, for the first time on appeal, that the statement should have been excluded from evidence on that basis. To preserve an evidentiary challenge for appeal, counsel must raise, in the trial court, an objection on the specific ground asserted on appeal. (*People v. Rundle* (2008) 43 Cal.4th 76, 116 [" 'Evidence Code section 353, subdivision (a) allows a judgment to be reversed because of erroneous admission of evidence only if an objection to the evidence or a motion to strike it was "timely made and so stated as to make clear the specific ground of the objection." Pursuant to this statute, " 'we have consistently held that the "defendant's failure to make a timely and specific objection" on the ground

_____

[4]     Santiago contends that it was especially prejudicial to allow the jury to listen to Mother make the statement about Girl's veracity because "the jury did not hear the [limiting] instruction until the next court day." However, the delay was the fault of defense counsel, not the trial court. As defense counsel told the trial court at the end of the trial day after the recording was played for the jury, "I just remembered during the playing of the control call that I need to get you my short [limiting] instruction so I can maybe email that . . . tomorrow if that's okay?" The trial court replied, "That's fine. Just remember so we can read it first thing Friday morning."

asserted on appeal makes that ground not cognizable.' " ' "]; *People v. Dykes* (2009) 46 Cal.4th 731, 756 ["trial counsel's failure to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue on appeal"].)  Here, when seeking to have the statement excluded from evidence, defense counsel neither cited Evidence Code section 352, nor did he make any argument invoking the concepts of probative value or undue prejudice that are normally associated with a request to exclude evidence under that provision.

Second, even if Santiago had asked the trial court to exclude the statement pursuant to Evidence Code section 352, the trial court would have been within its discretion to deny that request.  Mother's statement vouching for Girl's credibility was relevant to show how Santiago chose to react to the statement, including that he did not respond with a denial.  We are unpersuaded by Santiago's contention that the jury would not have missed any significant information if Mother's statement vouching for Girl's credibility was redacted from the recording.  The relevant statement occurred in the following context:

"[Santiago]:     Nothing happened.

"[Mother]:       *She wouldn't just make some shit up*
                 *[Santiago]. [Girl] is not lying to me.*  You might
                 think nothing happened if it was fucking
                 nothing to you, but it was something.
                 [Santiago], please. Why did you do this?

"[Santiago]:     [Son] (unintelligible)."  (Italics added.)

If the italicized portion was redacted, the jury would not learn that Santiago did not dispute Mother's direct assertion that Girl was telling the truth.  Santiago had the opportunity to directly confront Mother by stating that Girl *was* lying, but he did not do so.  Accordingly, the italicized portion

14

adds important information that the jury needed to understand Santiago's response to Mother.

Moreover, any prejudice caused by Mother's statement vouching for Girl's credibility was lessened by the trial court's instruction that the jury was not to use the statement for the truth of what Mother stated but only to assess Santiago's reaction. " '[W]e presume jurors are able to and do follow the court's limiting instructions.' " (*People v. Greeley* (2021) 70 Cal.App.5th 609, 617.)

In light of those considerations, even if Santiago had requested that the trial court order the statement redacted pursuant to Evidence Code section 352, the trial court would have been within its discretion to conclude that redaction was not required.

DISPOSITION

The judgment is affirmed.

IRION, Acting P. J.

WE CONCUR:


DO, J.


KELETY, J.

15