# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2982-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EMMANUEL JOHN, a/k/a
EMMANUEL DAWKINS,
EMMANUELLE JOHN, and
JOHN EMMANUEL,

     Defendant-Appellant.

_____

Argued September 30, 2021 – Decided November 29, 2021

Before Judges Alvarez and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 17-10-0756.

John Vincent Saykanic, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; John Vincent Saykanic, on the briefs).

Milton S. Leibowitz, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County

Prosecutor, attorney; Milton S. Leibowitz, of counsel
and on the brief).

PER CURIAM

Tried by a jury, defendant Emmanuel John was convicted of the lesser-included offense of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1); second-degree leaving the scene of an accident resulting in death, N.J.S.A. 2C:11-5.1; and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2). The trial judge sentenced defendant on January 11, 2019, to twenty-two years of imprisonment on the aggravated manslaughter subject to the No Early Release Act's eighty-five percent parole ineligibility, N.J.S.A. 2C:43-7.2, a concurrent term of six years for the child endangering, and a consecutive term of eight years for leaving the scene of an accident resulting in death. Defendant appeals, and we affirm.

The following facts were developed at trial through the testimony of witnesses, including defendant, and security footage. In the afternoon of June 15, 2017, defendant and the victim, Imran Masood, were seen arguing in a restaurant parking lot. Defendant's sixteen-month-old son was strapped in the car seat in the back of defendant's vehicle. Defendant, who was standing outside the driver's side door while Masood was seated in his own vehicle, reached through Masood's open window and repeatedly struck Masood in the face after

2

Masood allegedly called him a racial slur. Eventually, defendant returned to his car. Masood exited his vehicle and began walking behind defendant's BMW. An eyewitness testified that defendant accelerated the car backward "really hard" and "ran over [Masood]." The witness saw defendant move his car forward a little bit, stop and look for about five seconds, and then drive away.

Masood was taken to a hospital, where he remained unconscious, and ultimately died on August 3, 2017. The medical examiner attributed the death to blunt trauma to the head, which caused a lethal brain injury, and categorized the manner of death as homicide.

The security video from the adjacent restaurant did not have an audio component. However, the State played the tape—which depicted the incident— for the jury.

During the investigation, officers determined the BMW was owned by defendant's partner, Sherena Hightower, who acknowledged defendant was caring for the child that day while she was at work. When she returned home, neither defendant nor the baby were there. The child had been left at the sitter's, and the car was parked in front of the apartment.

Defendant testified that the argument was triggered by Masood accusing defendant of hitting Masood's Cadillac with the BMW door. When defendant

came around to assess if there was any damage, he intended to apologize, but Masood kept yelling and uttered the racial slur. Defendant said he responded by slapping and punching Masood twice through the open car window, grabbing the front of Masood's shirt, shaking him, and asking Masood why he had called him a name. At one point, defendant said he was about to leave but turned back to the window to shake Masood some more.

As defendant was pulling out of his parking space, he saw Masood standing "in an area . . . between both of [the] vehicles and towards the rear of both[,]" using his cell phone. He did not believe Masood was in the BMW's path. He just reversed. Defendant claimed he was not looking towards the rear because he was focused on making sure his car did not strike a vehicle parked to his left. He heard the sound of his car striking Masood and slammed on his brakes. Defendant panicked and left.

Defendant said as he drove away, he felt angry at himself and ashamed because he should have exercised more self-control but remained upset about being insulted in front of his child. That evening he posted on Facebook that he "beat somebody up" while with his child because of a racial slur. Defendant made the posting because he had never experienced anything like that and wanted his friends and family to be made aware of it. He explained that he

A-2982-18

omitted mentioning striking the victim with his car because "[his] reality at the time was that the guy [was] fine, he [would] get up and dust the dirt off his shoulder and go about his day."

After dropping his son at the sitter's and parking the car at Hightower's, defendant went to New York City to "hang out[,]" as was his custom on Thursdays. He had family and friends who lived there, and he sometimes stayed overnight. Defendant said nothing to Hightower about the incident because he knew she would be angry that he got into a fight while responsible for their child. He agreed that he may have missed calls and text messages from her, but stated he spoke to her a few days later when he learned there was a warrant out for his arrest and turned himself in. He claimed he did not know the victim had been hospitalized nor the extent of his injuries.

During the trial, another judge's law clerk overheard a conversation at a nearby restaurant between some jurors eating lunch together. The clerk believed they were discussing defendant's charges. The judge interviewed the jurors the clerk identified as being present and ruled the conversation was innocent and did not warrant a mistrial. We provide further details in our discussion of the incident.

The judge also granted the State's pre-trial application to admit defendant's prior conviction, albeit in sanitized form. He further denied defendant's motion for acquittal. We provide greater details in the relevant section.

Defendant contends the court erred by instructing the jury on flight and failing to instruct the jury on simple assault. The instructions will be reproduced in the pertinent portion of this opinion.

On appeal, defendant alleges the court committed the following errors:

> POINT I
>
> THE COURT BELOW ABUSED ITS DISCRETION IN DENYING THE MISTRIAL MOTION AS THE PREMATURE JURY DELIBERATIONS VIOLATED DEFENDANT'S SIXTH AMENDMENT AND NEW JERSEY CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY AND DENIED HIM HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL; U.S. CONST. AMENDS VI, XIV; N.J. CONST. ART. 1, PAR. 9, 10.
>
> POINT II
>
> THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING FOR IMPEACHMENT PURPOSES DEFENDANT'S 2010 NEW YORK STATE CONVICTION FOR THIRD-DEGREE MISDEMEANOR ASSAULT MANDATING A REVERSAL OF THE CONVICTIONS; ANY PROBATIVE VALUE OF THIS OUT-OF-STATE MISDEMEANOR ASSAULT CONVICTION WAS

6

SUBSTANTIALLY OUTWEIGHED BY THE PREJUDICE PURSUANT TO N.J.R.E. 403 IN VIOLATION OF DEFENDANT'S SIXTH AMENDMENT RIGHT TO TESTIFY ALONG WITH HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS.

POINT III

THE TRIAL COURT ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO R[ULE] 3:18-1 AS THE STATE DID NOT PROVE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT; DEFENDANT'S CONVICTIONS ARE CONTRARY TO THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND NEW JERSEY STATE CONSTITUTION (1947) ART. I, PARAS. 1, 10.

POINT IV

THE TRIAL COURT ABUSED ITS DISCRETION IN CHARGING FLIGHT OVER DEFENDANT'S OBJECTION IN VIOLATION OF DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL.

POINT V

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO CHARGE THE SEPARATE OFFENSE OF SIMPLE ASSAULT IN VIOLATION OF DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL.

A-2982-18

POINT VI

DEFENDANT'S CONVICTIONS SHOULD BE REVERSED AS THE ERRORS COMMITTED AT TRIAL EITHER INDIVIDUALLY, OR AGGREGATELY, DEPRIVED HIM [OF] HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL.

POINT VII

DEFENDANT . . . SHOULD HAVE BEEN SENTENCED TO THE MINIMUM TEN YEAR TERM OF IMPRISONMENT ON THE AGGRAVATED MANSLAUGHTER CONVICTION WITH A MINIMUM FIVE[-]YEAR SENTENCE ON THE MANDATORILY CONSECUTIVE LEAVING THE SCENE OF AN ACCIDENT CONVICTION (FOR A FIFTEEN YEAR AGGREGATE SENTENCE) AS THE MITIGATING FACTORS BOTH QUANTITATIVELY AND QUALITATIVELY OUTWEIGH ANY AGGRAVATING FACTORS.

I.

The decision to grant or deny a mistrial is subject to abuse of discretion review. State v. Harvey, 151 N.J. 117, 205 (1997). Such review is deferential. Ibid. We do not disturb denials of mistrial motions unless "necessary 'to prevent an obvious failure of justice.'" State v. Yough, 208 N.J. 385, 397 (2011) (quoting Harvey, 151 N.J. at 205). Defendant contends the trial judge's denial of his mistrial application based on the alleged juror misconduct was error, and

8

that the methodology he employed in interviewing jurors and making his ultimate determination was fatally flawed.

The trial judge regularly instructed the jurors not to discuss the case amongst themselves or begin deliberating until the entire case was over and they had been instructed to do so. These instructions were reiterated before each break.

After closing statements but before the final charge, the law clerk testified that while at a local restaurant he overheard jurors saying "'did it, didn't do it,' along those lines." He also thought he heard the word "car," and a reference to Colombia, and was concerned the jurors were discussing defendant's guilt or innocence. The judge called the jurors in, and the law clerk identified those he believed had been in the restaurant, including one juror who was not actually there. The judge examined them, one-by-one, under oath.

Each juror denied discussing the case amongst themselves or with anyone else. They independently said that during lunch they had talked about general topics, such as one juror's hope of obtaining employment in the area of social services, about having a reunion, travel, and vacations.

Following the judge's voir dire, defendant's attorney renewed her motion for a mistrial. The judge denied the motion, finding both the law clerk and the

9

jurors credible. He noted that each juror—except the one who was not at the restaurant—testified consistently as to the conversations, without any opportunity to tailor his or her recollection. He concluded that the law clerk merely overheard snippets of lengthier conversations that did not violate the instructions. Therefore, jurors had not prematurely deliberated and there was no need for a mistrial.

The judge did not abuse his discretion in denying defendant's application. He enjoys a unique perspective for assessing the credibility of the individual jurors and the law clerk. Nothing in the record casts doubt on his ultimate conclusion that nothing improper occurred. The judge's decision to proceed with the case was not a failure of justice. See Yough, 208 N.J. at 397.

The judge's decision to take the clerk's testimony and then individually voir dire jurors was not error. Jury-related decisions are reviewed for abuse of discretion. State v. Brown, 442 N.J. Super. 153, 182 (App. Div. 2015). The record is devoid of any evidence of jury taint. The evidence did not establish any premature discussion. The judge's procedures were careful, deliberate, and elicited the information necessary for a fair decision. See State v. R.D., 169 N.J. 551, 557-61 (2001). The court did not err in the methodology it employed to

develop a record as to the jurors' conversations, and the ultimate conclusion regarding taint was not an abuse of discretion.

## II.

Defendant was convicted in 2010 in New York of a third-degree misdemeanor assault. He received a one-year conditional discharge for the offense. At his trial for Masood's death, defendant argued his New York conviction should not be disclosed to the jury because the comparable charge in New Jersey was a disorderly persons offense. The judge disagreed because under New York law, third-degree misdemeanor assault was punishable by up to one year of incarceration. The judge held that defendant's 2007 conviction for third-degree drug possession was inadmissible as too remote, but the 2010 New York conviction should be sanitized and admitted for impeachment purposes pursuant to N.J.R.E. 609 and N.J.S.A. 2C:44-4(c), because the out-of-state conviction could be punished by more than six months' confinement. The court properly instructed jurors at closing not to use the conviction to find that defendant had a propensity to commit crimes, but solely to determine his credibility.

11

This decision, in accord with State v. Sands, 76 N.J. 127, 144 (1978), is discretionary.  We review it deferentially.  State v. Harris, 209 N.J. 431, 439 (2012).

Defendant's argument that under Federal Rule of Evidence 609, convictions are available for impeachment purposes only for crimes punishable by more than one year lacks merit.  New Jersey has no comparable limitation.  The fact that defendant's crime could not be punished by more than six months if he had committed it in New Jersey is irrelevant.  N.J.S.A. 2C:44-4(c)'s bright line rule controls.  The judge did not abuse his discretion.

III.

Defendant contends the trial court erred in denying his motion for acquittal because, as to the aggravated manslaughter, there was insufficient evidence that he caused the victim's death "under circumstances manifesting extreme indifference to human life."  He also contends that his conviction for endangering his son should be vacated because the young child was unharmed and likely unaware of events outside the car.

No miscarriage of justice under the law occurred in the denial of defendant's application.  See R. 2:10-1.  The evidence sufficed for conviction. The critical inquiry is "whether, after viewing the evidence in the light most

12

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

We apply the same standard as the trial court. State v. Fuqua, 234 N.J. 583, 590 (2018). In reviewing the State's case, the trial judge considers the evidence favorable to the prosecution's position, not the "worth, nature, or extent" of the evidence. State v. Brooks, 366 N.J. Super. 447, 453 (App. Div. 2004) (quoting State v. Kluber, 130 N.J. Super. 336, 342 (App. Div. 1974)). "No distinction is made between direct and circumstantial evidence[,]" and all inferences favorable to the State may be drawn even if not established beyond a reasonable doubt. State v. Tindell, 417 N.J. Super. 530, 549 (App. Div. 2011).

The surveillance video and defendant's own testimony made clear that he was aware of the victim's position behind his vehicle shortly before he reversed. Giving the State the benefit of all reasonable inferences from the record, a reasonable jury could find defendant guilty of murder, the offense for which defendant was indicted.

The same evidence implicating defendant in murder would certainly support a conviction for aggravated manslaughter. A person commits the latter if he "recklessly causes death under circumstances manifesting extreme

13

indifference to human life[.]" N.J.S.A. 2C:11-4(a)(1). Certainly, a jury could reasonably infer that defendant showed extreme indifference to the value of human life by accelerating backwards shortly after seeing the victim behind him. Thus, the judge did not err by denying the motion.

Defendant's son sat a short distance from defendant when he argued with Masood, struck him with his car, and fled. A reasonable jury could therefore find defendant endangered the child's welfare by performing these unlawful acts at such close proximity.

Under N.J.S.A. 2C:24-4(a)(2), a person with a legal duty to care for a child is guilty of endangering if he "causes the child harm that would make the child an abused or neglected child" as defined in N.J.S.A. 9:6-1. The abuse of a child is defined there, among other things, as the performance of an unlawful act in the presence of the child. N.J.S.A. 9:6-1.

The unlawful acts at issue begin with defendant's assault on the victim—striking him while the child was in his rear car seat, then running the victim over and intentionally fleeing the scene. The child's infancy makes no difference; the statute would otherwise be effectively applicable only when the child was of an age to be specifically cognizant of the wrongful conduct. It is the child's presence while his father committed these crimes that satisfies the statute.

Therefore, the judge did not err in concluding there was sufficient evidence to find defendant guilty both of aggravated assault and child endangering. The judge's decision was not a miscarriage of justice. See R. 2:10-1.

IV.

The court in this case instructed the jury as to flight as follows:

> There has been some testimony in the case from which you may infer that the [d]efendant fled shortly after the alleged commission of the crime. The [d]efendant denies that the acts constituted flight. The question of whether the [d]efendant fled after the commission of the crime is another question of fact for your determination. Mere departure from a place where a crime has been committed does not constitute flight. If you find that the [d]efendant, fearing that an accusation or arrest would be made against him on the charge involved in the indictment, took refuge in flight for the purpose of evading the accusation or arrest on that charge, then you may consider such flight in connection with all the other evidence in the case as an indication or proof of consciousness of guilt. Flight may only be considered as evidence of consciousness of guilt . . . if you should determine that the [d]efendant's purpose in leaving was to evade accusation or arrest for the offense charged in the indictment.

> It is for you as judges of the facts to decide whether or not evidence of flight shows a consciousness of guilt and the weight to be given such evidence in light of all the other evidence in the case.

15

The instruction tracked the model jury charge. Model Jury Charges (Criminal), "Flight" (rev. May 10, 2010).

"Flight of an accused is admissible as evidence of consciousness of guilt, and therefore of guilt." State v. Long, 119 N.J. 439, 499 (1990). However, flight "requires departure from a crime scene under circumstances that imply consciousness of guilt." Ibid. "Mere departure" is insufficient. Ibid. As a result, for departure to take on the legal significance of flight, "there must be circumstances present and unexplained which, in conjunction with the leaving, reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt." State v. Sullivan, 43 N.J. 209, 238-39 (1964). To be admissible, evidence of flight must be "intrinsically indicative of a consciousness of guilt," but need not "unequivocally support a reasonable inference" of the defendant's guilt. State v. Randolph, 228 N.J. 566, 595 (2017) (quoting State v. Randolph, 441 N.J. Super. 533, 562-63 (App. Div. 2015)).

The potential for harm from a flight instruction requires particular and careful attention. State v. Mann, 132 N.J. 410, 420 (1993). In this case, however, the flight instruction and the leaving the scene of an accident charge both relied upon similar elements. Had the jury credited defendant's explanation

that he thought the victim was unharmed, they may have acquitted him of the crime of leaving the scene of an accident and found his departure from the scene did not indicate "consciousness of guilt" as to the aggravated manslaughter.

As the Court said in <u>Mann</u>, 132 N.J. at 421, "[a]n adequate jury instruction would require the jury first to find that there was a departure, and then to find a motive for the departure, such as an attempt to avoid arrest or prosecution, that would turn the departure into flight." The judge instructed the jury that defendant's departure from the scene when he knew the victim was injured and on the ground either indicated consciousness of guilt or could be explained by his testimony. This instruction complied with <u>Mann</u>'s guidelines. <u>See</u> 132 N.J. at 420.

V.

Defendant urges us to conclude that the court erred by refusing to instruct the jury on simple assault as "an additional offense." On rare occasions, the State may request an instruction on a "related" offense. <u>State v. Thomas</u>, 187 N.J. 119, 130-34 (2006). The determination whether an offense is "related" to a charged offense focuses on "whether the offense charged and the related offense share a common factual nucleus." <u>Id.</u> at 130. "[A]bsent a waiver by the defendant, our constitutional guarantee of prosecution only by grand jury

17

indictment precludes any prosecutorial request for a jury instruction in respect of a related offense." Id. at 132-33. However, if a defendant "requests or consents to the related offense charge," an instruction may be given if "there is a rational basis in the evidence to sustain the related offense." Id. at 133.

Defense counsel requested a jury instruction for simple assault as an additional offense, pointing to defendant's earlier confrontation with the victim. The strategy may have been that if the jury found defendant credible, it would enable a compromise verdict favorable to defendant—finding him guilty of a minor assault offense while acquitting him of the greater offense.

Beginning with the basics, the simple assault in this case had no factual nexus with the murder indictment count. Simple assault by punching does not share a factual nucleus with the homicide, occurring later and involving a motor vehicle. No statute, rule, or case provides that a defendant may request an instruction on an offense unrelated to the indicted crimes. Under the Thomas guidelines, there was no basis for an instruction on simple assault. See id. at 130-34.

## VI.

Defendant also asserts that the cumulative errors warrant reversal. We find this argument to be so lacking in merit as to not warrant any discussion in a written opinion. R. 2:11-3(e)(2).

## VII.

"Appellate review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). A trial court enjoys "considerable discretion in sentencing." State v. Blann, 429 N.J. Super. 220, 226 (App. Div. 2013), rev'd on other grounds, 217 N.J. 517 (2014). An appellate court first must review whether the sentencing court followed the applicable sentencing guidelines set forth in the Code of Criminal Justice. State v. Natale, 184 N.J. 458, 489 (2005).

The sentencing court found aggravating factors three, six, and nine. N.J.S.A. 2C:44-1(a)(3), (6), (9). The judge stated that defendant's prior criminal history, particularly the 2010 assault conviction, was pertinent because defendant on this occasion engaged in violent conduct resulting in a death. He gave factor nine great weight because defendant's prior conduct established an individual need to deter. The judge did not find any factors in mitigation because they were unsupported in the record. See N.J.S.A. 2C:44-1(b). We

A-2982-18

agree with that conclusion. For example, the mere fact that defendant has a family, without any other consideration, does not support factor eleven. <u>See</u> N.J.S.A. 2C:44-1(b)(11). The families of incarcerated defendants are generally harmed by the incarceration of a parent. Nothing unique about defendant's individual situation established a factual basis for this consideration. The judge's analysis of the aggravating and mitigating factors was not mistaken. The sentence does not shock our conscience. <u>See</u> <u>State v. Roth</u>, 95 N.J. 334, 365 (1984).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2982-18